# REPORTS OF CASES

DETERMINED IN THE

# SUPREME COURT

OF THE

# STATE OF NEVADA,

JANUARY TERM, 1869.

---

## THE STATE OF NEVADA EX REL. AUGUSTUS ASH, v. WM. K. PARKINSON.

LEGISLATIVE FUND ACT CONSTITUTIONAL. The Act of 1869, to create a legislative fund (Stats. 1869, 54) is not unconstitutional.

PRESUMPTION OF CONSTITUTIONALITY OF STATUTES. The presumptions are always in favor of the rightful exercise of the law-making power, and a statute will be sustained if there be any reasonable doubt of its unconstitutionality.

CONSTITUTIONAL CLAUSE AS TO GENERAL AND UNIFORM LAWS. The Legislative Fund Act of 1869 (Stats. 1869, 54) does not violate the constitutional clause providing for general and uniform laws where they can be made applicable, (Const., Art. IV, Sec. 21) because no general law could be made applicable to its subject matter.

CONSTITUTIONAL CLAUSE AS TO PUBLIC DEBT OF STATE. The Legislative Fund Act of 1869, was not in violation of the constitutional provision against contracting a public debt exceeding three hundred thousand dollars, (Const., Art. IX, Sec. 3) though then there was a public debt to that amount, for the reason that the Act did not create a debt within the meaning of the Constitution.

ADMISSIONS OF COUNSEL IN ARGUMENT. Upon a grave question involving the public interest the mere admission of counsel will not relieve the Court from its consideration.

CONSTITUTIONAL LANGUAGE—PREVIOUS CONSTRUCTION BY OTHER STATES. Where language is employed in the Constitution similar to the language in the Con-

Ash *v.* Parkinson.

stitution of other States, which had previously received judicial interpretation, the legal presumption arises that the language is used with reference, to such interpretation.

APPROPRIATION IN ANTICIPATION OF RECEIPT OF PUBLIC REVENUE. The public revenues may be appropriated by the Legislature in anticipation of their receipt, as is done in the Legislative Fund Act of 1869, (Stats. 1869, 54) and it is not necessary to the validity of such an appropriation that funds to meet it should be in the treasury.

EXPENDITURE NECESSARY TO CARRY ON LEGISLATIVE ACTION. As the Constitution provides for a Legislature and recognizes incidentally the necessary officers and ordinary adjuncts of such a body, it also impliedly authorizes such expenditures as are necessary to carry it on.

INTEREST ON CONTROLLERS' WARRANTS. If, as is now decided, warrants issued under the Legislative Fund Act of 1869, create no debt against the State within the meaning of the constitutional restriction, (Const., Art. IX, Sec. 3) the addition of an interest clause to such warrants cannot make them unconstitutional.

INTEREST, WHAT. Interest constitutes no part of the original demand; it is simply a statutory allowance for delay.

POLICY AND EXPEDIENCY OF STATUTES. With the question of the policy or expediency of a statute the judicial department has nothing to do; in that regard the Legislature is supreme.

ABUSE OF POWER NO ARGUMENT AGAINST ITS EXISTENCE. That a power may be abused is no argument against either its existence or its exercise.

INTEREST ON "FIXED COMPENSATION" OF LEGISLATORS. The Legislative Fund Act of 1869, (Stats. 1869, 54) in so far as it provides for interest on warrants drawn for the pay of Legislators, is not repugnant to the constitutional provision regarding a fixed compensation to members of the Legislature, (Const., Art. IX, Sec. 33) for the reason that the interest, if any accrues, is to be paid not as compensation for services but as damages for delay.

CONSTITUTIONAL CLAUSE AS TO BOARD OF EXAMINERS—PAY OF LEGISLATORS. The Legislative Fund Act of 1869 is not repugnant to the constitutional provision as to the Board of Examiners, (Const., Art. V, Sec. 21) nor do the claims therein provided for require action by such Boards.

FUNCTIONS OF BOARD OF EXAMINERS. The institution of the Board of Examiners was not intended as a check on legislative extravagance, but to secure, as a pre-requisite to legislative action, an examination of such claims as require such action upon them as claims—not creative action but adoptive or rejective action.

CONSTITUTIONAL "CLAIM AGAINST THE STATE." A "claim against the State," within the meaning of the Constitution, (Art. V, Sec. 21) is a demand by some one other than the State against it for money or property; but when a claim originates with the State or in its behalf, and cotemporaneously with its origin, means, and manner of payment are provided as in case of a bond, it does not then constitute a claim proper against the State but a liquidated and legalized demand against the treasury.

Ash *v.* Parkinson.

LEGISLATIVE POWER TO APPROPRIATE MONEY. The Legislature has power to appropriate money as it sees fit except when limited by the Constitution.

INCIDENTAL EXPENSES OF LEGISLATURE TO ACCRUE. Incidental expenses of the Legislature to accrue cannot be held to constitute " claims against the State," nor do they require action by the Board of Examiners as such.

CONSTITUTIONAL INTERPRETATION—COTEMPORANEOUS LEGISLATION. In constitutional interpretation cotemporaneous legislation is always considered of force.

COTEMPORANEOUS LEGISLATION AS TO LEGISLATIVE EXPENSES. The constitutional provision relating to the Board of Examiners (Const., Art. V, Sec. 21) has been treated by cotemporaneous legislation as inapplicable to legislative expenses.

INCIDENTAL EXPENSES OF LEGISLATURE ALREADY ACCRUED. There is a reasonable doubt as to whether the incidental expenses of the Legislature already accrued, constitutionally require examination by the Board of Examiners; and on the question of the constitutionality of a statute providing for the payment of such expenses without such examination, it cannot on the ground of not providing for such examination be pronounced unconstitutional.

THIS was an original proceeding in the Supreme Court, for a writ of mandamus upon William K. Parkinson, the Controller of State. The facts are stated in the opinion.

*C. J. Hillyer, S. Bonifield, P. W. Welty,* and *C. E. DeLong,* for Petitioner.

I. If there is any ambiguity in the constitutional provisions, the law must be upheld. (Sedgw. on Const. Law, 482; 17 Cal. 551.)

II. The principal and interest are both payable directly out of the treasury by appropriation made, and therefore no constitutional debt is incurred. The demand is not excepted from the debt clause by reason of the money being supposed to be in the treasury; but by reason of the manifest intention of the Legislature that it shall be met by current revenue. (*State* v. *Medbury,* 7 Ohio State Reports, 526; 27 Cal. 175.)

III. Interest is not payment for services, but compensation for delay of payment. The warrants by the Act are payable on demand; and if there is money in the treasury, no interest will be paid.

IV. Cotemporaneous legislative construction sustains the law. Three successive Legislatures have passed laws—and the Governor approved them—possessing the same objectionable features as the present law. (Sedgw. on Const. Law, 487; Stats. 1864-5, 129; Stats. 1866; Stats. 1867.)

V. The Act does not "pass upon or purpose to pass upon" any kind of claim or demand. The drawing of the warrant could not impede the action of the Examining Board, even if the examining clause of the Act was inoperative by reason of its unconstitutionality.

VI. The incidental expenses of the Legislature are not claims within the meaning of the Constitution. The phrase "claims against the State" is used twice in the same section; it is reasonable to say, that it has the same meaning in each place. In the latter clause, it certainly means that class of claims which require to be "passed upon" by the Legislature; it must be held to mean nothing more than this in the first clause.

The idea of the Board of Examiners being constitutionally a sort of Court of Claims is visionary. No such power was ever given in such vague language. The power given is simply to examine, not to adjudicate. The whole machinery of its action is under the control of the Legislature, the body called its appellate tribunal. In fact, it is a Committee, not a Court, because its action must be followed by legislative action. Wherever therefore there is no need of legislative action, there is no constitutional opportunity of action by the Board.

VII. The most that can be said in regard to the constitutional provision for an Examining Committee is that it prescribes a constitutional pre-requisite to the validity of a particular class of laws. It is therefore a form, like many others, designed to guard against the improper passage of a particular class of laws; and this form is not at all of the essence of the law. Nothing in the law, or in any constitutional record, certificate, or journal, show whether this form has been complied with or not. And it is not matter *in pais* which can be inquired into by other evidence. (3 Ohio, 482; 23 Wend. 169; 4 Hill, 394.)

*R. M. Clarke*, Attorney-General, and *R. S. Mesick*, for Respondent.

I. The Act of 1869 is special in a case where a general law can be made applicable, and is therefore in violation of the Constitution, article four, section twenty-one. It provides interest-bearing warrants for a part only of the general indebtedness of the

Ash *v.* Parkinson.

State.   It also provides a particular method of redemption for a
part only of the general indebtedness of the State.   It is further
special in exempting a part of the general indebtedness of the
State from the examining, auditing, and disbursing powers of the
State.   A general law could be made applicable.

II.   The Act violates section three, article nine, of the Constitu-
tion, limiting the indebtedness of the State to three hundred thou-
sand dollars, for the reasons that the indebtedness of the State
already equals the constitutional limits; that there is now no
money in the general fund; and that the warrants authorized
create a present and absolute, and not a future and contingent
debt.

III.   The issuance of interest-bearing warrants upon the treas-
ury, and especially the issuance of interest-bearing warrants in an-
ticipation of indebtedness, convertible into money by negotiation,
is in violation of the manifest spirit of the Constitution, and the
financial theory of the State.   (Const., Art. IV, Secs. 19, 28,
and 33; Art. IX, Sec. 3; Art. XVII, Sec. 24; Const. De-
bates, 757, *et seq.*)

It was the unquestionable theory of the framers of the funda-
mental law to require the affairs of the State to be conducted on a
cash basis, and limit the public debt to three hundred thousand
dollars; to induce and compel economy, and to limit taxation and
prevent the payment of interest.

The measure in suit, in principle and effect, defeats these wise
intentions, destroys every safeguard, and breaks down every bar-
rier to extravagance.

IV.   If one class of warrants may be made interest-bearing,
all may be.   If fifteen per cent. interest may be allowed, one hun-
dred or any rate may be.   If warrants for five thousand dollars
may be drawn in anticipation, both of revenue and indebtedness,
and put upon the market and sold, then warrants for nine hundred
thousand dollars, or any sum, may be, and thus, by circumlocution,
we accomplish the very thing, and induce the identical evil sought
to be obviated by the Constitution.   (Const., Art. IX, Sec. 3;
Const. Debates, 757, *et seq.; Nougues* v. *Douglas,* 6 Cal. 65;
*People* v. *Johnson,* 7 Cal. 499.)

V.   The Act is unconstitutional because it increases the pay of members and attachés. (Const., Art. IV, Sec. 33; Stats. 1864–5, 97, Secs. 1–3.)

VI.   The Act is unconstitutional, inasmuch as it exempts the contingent funds created, and all money therein, from the action of the Board of Examiners, Controller, and Treasurer. (Const., Art. V, Sec. 21; Const. Debates, 161; 16 Cal. 26.) By the Act the incidental expenses incurred by the Legislature are exempted from the action of the Board of Examiners.

VII.   The Act is a plain usurpation of executive power. It vests in either branch of the Legislature the power vested in the Board of Examiners; it vests the auditing and disbursing powers of the State in the Sergeant-at-Arms, an officer unknown to the Constitution—and so far as the contingent expenses of the Legislature are concerned makes him for the time being Treasurer and Controller. (21 Mo. 552; 10 Wis. 525; Const. Wis., Art. VI, Sec. 2.)

By the Court, Whitman, J.:

This is an application on behalf of Augustus Ash, Sergeant-at-Arms of the Assembly of the State of Nevada, now in session, for a writ of mandamus upon the Controller of the State, that he may issue to applicant two certain warrants, one for two hundred and eighty dollars, pay due relator by law as such Sergeant-at-Arms, and one for five thousand dollars as contingent fund of the Assembly, both claimed under the provisions of the Act of the present Legislature, entitled "An Act to create Legislative Funds," which is as follows:

" The People of the State of Nevada, represented in Senate and Assembly, do enact as follows:

"Section 1.   For the purpose of paying the salaries of the members and attachés of the present Legislature, the mileage of the members, and the incidental expenses of the same, the State Treasurer is hereby authorized and required to set apart from the first moneys coming into the general fund, not otherwise specially appropriated, the sum of sixty-five thousand dollars in gold coin,

which shall constitute a fund to be denominated ' The State Legislative Fund.' Any deficiency that may exist in the Legislative Fund of the last session may also be paid out of the Legislative Fund hereby created. The State Controller is hereby authorized and required to draw his warrants on said fund in favor of the members and attachés of the present Senate and Assembly for mileage and compensation due, when duly certified to him in accordance with law: *provided*, said warrants shall bear interest at the rate of fifteen per cent. per annum from date until paid, or advertised for payment, as provided in section number four.

"Sec. 2. The State Controller is hereby authorized and required to draw warrants payable out of the State Legislative Fund, created by the preceding section, in the sum of five thousand dollars, in favor of the Sergeant-at-Arms of the Assembly; and in the sum of four thousand dollars, in favor of the Sergeant-at-Arms of the Senate—said warrants to bear interest at the rate of fifteen per cent. per annum, from date, until paid, as provided in section four of this Act: for the purpose of defraying the incidental expenses of the two Houses—said amount to be held by those officers and paid out by them in such manner as their respective bodies shall by resolution direct. Said amounts are hereby exempted from the operation of 'An Act relating to the Board of Examiners, to define their duties and powers, and to impose certain duties on the Controller and Treasurer,' approved February 7th, A.D. 1865. Any balance remaining in the hands of either Sergeant-at-Arms, upon the adjournment of the Legislature, shall be paid to the State Treasurer, and revert to the General Fund."

"Sec. 4. The State Treasurer shall number and register in the order of presentation, in a book to be provided by him, all the warrants presented to him, drawn by the State Controller on the Legislative Fund and Contingent Funds; and whenever there shall be the sum of five thousand dollars in the hands of the Treasurer, he shall give notice upon a bulletin board in his office setting forth the fact; and that warrants, bearing certain numbers and dates, shall be presented for payment, and upon presentation will be paid by him; and said warrants so advertised for payment shall cease bearing interest from the date of such notice.

" Sec. 5.    Nothing contained in this Act shall affect the provisions of ' An Act entitled an Act to provide for the Payment of the Salaries of the Judges of the Supreme Court of the State of Nevada, passed February 21st, 1866.' "

The defendant refuses to issue either of said warrants, upon the ground that the Act is unconstitutional.    The agreed facts are as follows :

1.    The Assembly of the State of Nevada, at the present session of the Legislature, has created and appointed certain offices and employments, to wit : Committee Clerks—which said offices and employments were not created or authorized by any Act or resolution of the Legislature of the State of Nevada, until then in force, except as authorized by Act of January 21st, 1865.

2.    That the compensation of said clerks and employés has been fixed at six dollars per diem by resolution, and the Sergeant-at-Arms of the Assembly has issued to said clerks, and each of them, his certain certificate of indebtedness, or skeleton script for the per diem of said clerks, which they now hold as evidence against the State of Nevada.

3.    That the Senate of the State of Nevada, at the present session of the Legislature, has by resolution appointed William M. Cutter, Reporter of the Senate.    That said Cutter has entered upon said office, and is now discharging the duties thereof.

4.    The indebtedness of the State in outstanding interest-bearing bonds now equals and did equal, for ordinary State purposes prior to the Act of February 5th, 1869, the full sum of three hundred thousand dollars exclusive of interest.

5.    There is no money in the State treasury, or in the General Fund thereof, applicable to the payment of the claims or indebtedness arising under the Act of February 5th, 1869.

6.    No sum of money has been paid to any member or attaché of the present Legislature, nor has any warrant been issued to them for compensation or mileage by the Controller.

7.    The Assembly at the present session, through its Sergeant-at-Arms, by resolution merely—and the Sergeant-at-Arms, upon his authority as such—has purchased articles of property, and incurred

incidental expenses, and contracted indebtedness, amounting to
————— ————— dollars—none of which claims have been acted
upon by the Board of State Examiners, or presented to them for
their action.

The case naturally divides into distinct propositions as to the
separate warrants demanded, and will be so considered. The
defendant recognizing the well-known axioms that the presumptions
are in favor of the rightful exercise of the law-making power, and
that the law should be sustained if there be any reasonable doubt
of its unconstitutionality, contends that it is clearly repugnant to
the Constitution, upon several grounds, which will be decided in
their order of presentation.

The first violation alleged is of section twenty-one, article four,
reading thus:

" Sec. 21. In all cases enumerated in the preceding section,
and in all other cases where a general law can be made applicable, all
laws shall be general and of uniform operation throughout the State."

It is evident from inspection of the statute, that it does not fall
within the objection made, as no general law could be made applicable
to the subject matter of the Act. Whether the determination of
the question of the applicability or non-applicability of a general
law in a given case is matter for legislation or judicial decision, is
here not a vital point, and is not passed upon.

It is next objected that the Act creates State indebtedness above
the constitutional limit of three hundred thousand dollars, and is
therefore repugnant to section three of article nine of the Consti-
tution, as follows:

" Sec. 3. For the purpose of enabling the State to transact its
business upon a cash basis from its organization, the State may
contract public debt; but such debt shall never in the aggregate,
exclusive of interest, exceed the sum of three hundred thousand
dollars, except for the purpose of defraying extraordinary expenses
as hereinafter mentioned.

" Every such debt shall be authorized by law for some purpose
or purposes, to be distinctly specified therein; and every such law
shall provide for levying an annual tax sufficient to pay the interest
semi-annually, and the principal within twenty years from the pas-

sage of such law; and shall specially appropriate the proceeds of said taxes to the payment of said principal and interest; and such appropriation shall not be repealed, nor the taxes be postponed or dismissed, until the principal and interest of said debts shall have been fully paid.

"Every contract of indebtedness entered into or assumed by, or on behalf of the State, when all its debts and liabilities amount to said sum before mentioned, shall be void and of no effect, except in cases of money borrowed to repel invasion, suppress insurrection, defend the State in time of war, or if hostilities be threatened, provide for the public defense."

It was admitted in the course of the argument by counsel for defendant, that an appropriation of money by the Legislature, and the drawing of ordinary warrants thereon in anticipation of revenue, that being provided for as in the present case, by general revenue bill or otherwise, would not create a debt within the meaning of the section of the Constitution last cited, but the admission of counsel upon a grave question of this nature will not relieve the Court from its consideration. The matter must be viewed in its full bearing, and if the objection in its broadest sense be good, it must be sustained.

As an original proposition, it might be difficult satisfactorily to show why an appropriation of money, where no money existed, was not creating, or rather recognizing a preëxisting debt, especially where a warrant was drawn thereon, which though not a debt in itself, would naturally be supposed to be based upon one preëxisting, and to be the evidence thereof, but similar language in the Constitutions of other States had received judicial interpretation before the formation or adoption of the Constitution of the State of Nevada, and thus the legal presumption arises that the language was used with reference to such interpretation. This is article eight of the Constitution of California:

"The Legislature shall not in any manner create any debt or debts, liability or liabilities, which shall singly or in the aggregate, with any previous debts or liabilities, exceed the sum of three hundred thousand dollars, except in case of war, to repel invasion, or to suppress insurrection, unless the same shall be authorized by some

law for some single object or work, to be distinctly specified therein, which law shall provide ways and means exclusive of loans for the payment of interest of such debt or liability as it falls due, and also to pay and discharge the principal of such debt or liability within twenty years of the time of the contracting thereof, and shall be unrepealable until the principal and interest thereof shall be paid and discharged; but no such law shall take effect until at a general election it shall have been submitted to the people and have received a majority of all the votes cast for and against it at such election; and all money raised by authority of such law shall be applied only to the specific object therein stated, or to the debt thereby created; and such law shall be published in at least one newspaper in each judicial district, if one be published therein; throughout the State for three months next preceding the election at which it is submitted to the people."

Discussing that section in the case of *The State of California* v. *McCauley*, (15 Cal. 455) Chief Justice Field, delivering the opinion of the Court, says: "The eighth article was intended to prevent the State from running into debt and to keep her expenditures, except in certain cases, within the revenues. These revenues may be appropriated in anticipation of their receipt as effectually as when actually in the treasury. The appropriation of the moneys when received meets the services as they are rendered, thus discharging the liabilities as they arise, or rather anticipating and preventing their existence. The appropriation accompanying the services operates in fact in the nature of a cash payment."

And again, in *McCauley* v. *Brooks*, (16 Cal. 28) he uses this language, speaking of the same section under review in the previous case: "To an appropriation within the meaning of the Constitution nothing more is requisite than a designation of the amount, and the fund out of which it shall be paid. It is not essential to its validity that funds to meet the same should be at the time in the treasury. As a matter of fact, there have seldom been in the treasury the necessary funds to meet the several amounts appropriated under the general appropriation acts of each year. The appropriation is made in anticipation of the receipt of the yearly revenues. It constitutes indeed the authority of the Controller to

3

draw his warrants, and of the Treasurer, when in funds, to pay the same, and that is all."

In the case of *Koppicus* v. *State Capitol Commissioners*, (16 Cal. 253) the same objection was raised to an Act of the Legislature, " authorizing the erection of a State Capitol, at a cost not to exceed five hundred thousand dollars, and empowering the Commissioners to contract to the extent of one hundred thousand dollars." The same Judge says: " For the liabilities which may be thus incurred the Act makes provisions; it appropriates for that purpose the requisite sum, thus anticipating their existence and discharging them as they arise."

These cases, decided in 1860, have been since commented upon and fully sustained in the case of *The People* v. *Pacheco*, (27 Cal. 175) decided five years thereafter. In the State of Ohio a similar constitutional provision exists with a further restriction, limiting prospective appropriations to a term of two years. In the case of *The State* v. *Medbury*, (7 Ohio, State, 529) upon very elaborate discussion, Justice Swann, for the Court, admits the proposition to the full extent claimed by the California decisions, subject only to the two years' restriction. He says : " So long as this financial system is carried out in accordance with the requirements of the Constitution, (two years' restriction) unless there is a failure or defect of revenue, or the General Assembly have failed for some cause to provide revenue sufficient to meet the claims against the State, they do not and cannot accumulate into a debt. Under this system of prompt payment of expenses and claims as they accrue, there is undoubtedly, after the accruing of the claim and before its actual presentation and payment, a period of time intervening in which the claim exists unpaid ; but to hold that for this reason a debt is created, would be the misapplication of the term ' debt,' and substituting for the fiscal period a point of time between the accruing of a claim and its payment for the purpose of finding a debt ; but appropriations having been previously made and revenue provided for payment as prescribed by the Constitution, such debts, if they may be so called, are in fact, in respect of the fiscal year, provided for with a view to immediate adjustment and payment. Such financial transactions are not therefore to be deemed debts."

The admission of counsel in this case may then be considered to be correctly based, as the statute appropriates money to come into the treasury, sets it apart in a special fund, and directs warrants to be drawn on this fund. But there is another ground upon which it may be properly claimed that the particular appropriation of the statute under consideration does not increase the State debt within the meaning of the Constitution. That instrument provides for a Legislature, and recognizes incidentally a Secretary of the Senate, a Clerk of the Assembly, and other officers and employés, and, by necessary implication, all the ordinary adjuncts of a legislative body. The Legislature is not only an important but a vital branch of the State Government, as without it no taxes can be levied or revenue collected, no appropriation made, and consequently no money drawn from the treasury.

Without the vivifying powers of the Legislature the State Government would become defunct. If, then, the Constitution did not expressly authorize its expenditures, the necessary implication would be to that effect; otherwise, the Constitution would be the destruction of the very thing it was ordained to organize and erect. Whatever expense there is necessary to carry on the Legislature is authorized by the Constitution, and may be incurred while that instrument exists, unless amendment be made in that regard, subject only to such other limitations as there may be. From both standpoints, then, it follows that neither in making the appropriation nor in authorizing the drawing of ordinary warrants thereon is the statute unconstitutional.

Defendant, however, contends that a different rule obtains when interest is allowed on warrants. If it be true that the issuance of a warrant creates no debt, and that no debt, within the purview of the Constitution, preëxisted, as would follow from the reasoning of the cases previously cited, how can the addition of interest make that an unconstitutional debt which was not so before? Interest constitutes no part of the original demand; it is simply a statutory allowance for delay. If the money be in the treasury, then no interest accrues; if not, the party holding the warrant is compensated for waiting until there is. It may be said that the allowance of interest presupposes a debt, for that there can be no interest

except upon some principal; but upon the theory of the cases cited there is a debt, but not a debt repugnant to the Constitution, as it is only contingent—a debt existent, but payable only upon the collection of revenues. In this view, as the interest follows the principal, that being contingent, so the interest. Upon the basis that legislative expenses were contemplated and authorized by the Constitution, the question of interest resolves itself into a matter purely of policy or expediency. Suffice it to say, that with such question this Court has nothing to do; in that regard the Legislature is supreme. It might, unless prohibited by some other provision of the Constitution, fix the rate of interest at one hundred per cent. per minute (as suggested by counsel); it might donate the money of the State; it might place the rate of taxation so high as to utterly destroy all industrial interests: but that a power may be abused is no argument against either its existence or its exercise. For the proper exercise of its power the Legislature is responsible morally in the consciences of its individual members, and politically to their constituents.

It is further objected that the statute is repugnant to section thirty-three of article four of the Constitution, which says:

" Sec. 33. The members of the Legislature shall receive for their services a compensation to be fixed by law, and paid out of the public treasury; but no increase of such compensation shall take effect during the term for which the members of either House shall have been elected: *provided*, that an appropriation may be made for the payment of such actual expenses as members of the Legislature may incur for postage, express charges, newspapers and stationery, not exceeding the sum of sixty dollars for any general or special session, to each member, and furthermore provided that the Speaker of the Assembly, and Lieutenant-Governor as President of the Senate, shall each, during the time of their actual attendance as such presiding officers, receive an additional allowance of two dollars per diem."

The pay of a member, lawful officer, attaché, or employé of the Legislature, or either branch thereof, is due when his service is rendered, and it is for the Legislature to say when that pay shall be drawn, whether daily, weekly, monthly or otherwise, and

Ash *v.* Parkinson.

the presumption is not that the agreement implied in such service is to wait for an indefinite length of time or any time for the payment. The warrant is drawn only for so much money—the actual amount of pay fixed by law. • If the money be in the treasury the money is presently paid, if not interest follows, not as a compensation for service, but as damages for delay. This allowance of interest may be an invidious distinction against other creditors of the State, but in the same light, so is the immediate appropriation of money and its withdrawal from the General Fund, but it is conceded that the Legislature have the power to do the latter. In both cases the question is not of power but of policy, and that this Court cannot consider. Some argument on the part of defendant is addressed to the very probable presumption that the main object of the allowance of interest is to facilitate the sale of the warrants in the market, but it is not pretended that the interest allowed would advance the price of the warrant above the legal compensation of the party to whom it is issued. A case might be imagined presenting that question, when it arises it will be time to decide it. There is no constitutional reason why warrants should not be so issued as to afford to the holder their full nominal value. By the allowance of interest, taxation will be increased; but if in this or any other instance, the people object in an aggregate mass to that which is ordinarily each man's individual action, that is, paying interest, when there is delay in payment of the principal, that is a matter of accounting between them and their representatives.

From what has been said it follows that the statute is not unconstitutional upon the grounds thus far urged and noticed, and therefore to that extent must be sustained. As there is no other nor further constitutional objection to that portion of the statute affecting the two hundred and eighty-dollar warrant, the applicant is entitled to his writ upon the defendant for its issuance.

To that portion of the statute directing the drawing of the five thousand-dollar warrant it is objected—

1st. That it exempts the Contingent Fund created from the action of the Board of Examiners, Controller, and Treasurer. Portion of this and other objections before and to be noticed, was argued upon certain statutes. If this statute conflicts with those

cited, being later, it controls. The constitutional objection is based upon the following provision: " Art. V, Sec. 21: The Governor, Secretary of State, and Attorney-General, shall constitute a Board of State Prison Commissioners, which Board shall have such supervision of all matters connected with the State Prison as may be provided by law. They shall also constitute a Board of Examiners, with power to examine all claims against the State, (except salaries or compensation of officers fixed by law) and perform such other duties as may be prescribed by law. And no claim against the State (except salaries or compensation of officers fixed by law) shall be passed upon by the Legislature without having been considered and acted upon by said Board of Examiners."

The defendant contends that this section imposes the action of the Board of Examiners as a jurisdictional pre-requisite to any legislative action upon any real or assumed claim against the State for the payment of money, " except salaries or compensation of officers fixed by law," and accepting the logical consequence of this position, admits that such view would include all bonds, interest thereon, and many other matters heretofore provided by the Legislature to be paid without such procedure. If he be right and action so futile must be had, submission should be made ; but from a consideration of the section referred to, a more natural, and to the credit of its framers, intelligent conclusion appears. One premise of the position is, that the section creates the Board of Examiners as a check to legislative extravagance. If such was the intention there is a sad failure of accomplishment. An intended check without the slightest means of enforcement—for under the section the only power given is to examine, and the ultimate and only power of adoption or rejection, is in the very body intended to be checked. A checking board requiring legislative action to make it even advisory ! It is unjust to the members of the constitutional convention to accuse them of such fatuity. The Board of Examiners was intended to subserve an important purpose, but not that on which defendant insists. That it prescribes a prerequisite to legislative action is true, (whether of form or essence will be considered hereafter) and for that very reason can apply only to such claims as require legislative action upon them as

claims—not creative action but adoptive or rejective action.    The exception strengthens this view.    A salary or compensation which required no legislative action could not be brought up therefor ; if not, then it could not· be examined, as examination is only a prerequisite for such action, but there might be a salary or compensation requiring further legislative action, as for instance an appropriation, such salary or compensation is therefore excepted from examination.    A ·claim is a demand by some one other than the State against it for money or property ; but when the claim originates with the State, or in its behalf, and cotemporaneously with its origin, and means and manner of payment are provided, as in the case of a bond, it does not then constitute a claim proper against the State, but a liquidated and legalized demand against the treasury.    It cannot be doubted that, except when limited by the Constitution, a Legislature has power to appropriate money as it sees fit, and only by such appropriation can money be drawn from the treasury.    " No money shall be drawn from the treasury but in consequence of appropriations made by law.    An accurate statement of the receipts and expenditures of the public money shall be attached to and published with the laws of every regular session of the Legislature." (Const., Art. IV, Sec. 19.)

The only prohibitory provisions are : First.    Section 28, Article IV, as follows: " No money shall be drawn from the State treasury as salary· or compensation to any officer or employé of the Legislature, or either branch thereof, except in cases where such salary or compensation has been fixed by a law in force prior to the election or appointment of such officer or employé, and the salary or compensation so fixed shall neither be increased or diminished so as to apply to any officer or employé of the Legislature, or either branch thereof, at such session : *provided*, that this restriction shall not apply to the first session of the Legislature."    Second.    Section 9, Article VIII, as follows: " The State shall not donate or loan money or its credit, subscribe to, or be interested in, the stock of any company, association, or corporation, except corporations for educational or charitable purposes."

The Legislature then has power to appropriate money for its contingent expenses, and it only remains to be seen whether, having

appropriated, it may disburse; if it donates, it delegates disbursement. It would be a strange conclusion that it could delegate powers it has not. If the Legislature has power to take and use money from the treasury for one purpose, it has for all, subject to the provisions last cited, and, therefore, in the present instance, its action is constitutional, unless thereby a claim against the State is passed upon contrary to the meaning of the provision of section twenty-one, article five, of the Constitution, as interpreted by defendant.

Incidental expenses to accrue cannot be held to constitute claims proper. The Legislature takes the money, each branch places a certain amount in the hands of its Sergeant-at-Arms; whatever it is deemed proper to spend money for, in the nature of an incidental expense, is decided, and on that account the officer is directed to make disbursement. Who has any claim against the State? Not the party to whom the officer pays the money, for, in the first place, he is not dealing with the State or its agent, but only with the agent of one portion of one branch of the State Government; and secondly, he is paid. Not the officer, for he has the money in his hands. Not either branch of the Legislature, for it has money in the hands of its agent. There can be no legal claim for money except upon a matter of debt or damage, and then there could be no legal claim against the State except; it owed and having paid, by its Treasurer, upon the warrant of its Controller, it could owe nothing. The question here is, so far as relates to incidental expenses to accrue, not as to the power of the Legislature to pass upon claims, but to appropriate and use the money. Such power it has, subject to the constitutional restrictions contained in section twenty-eight, article four, and section nine, article eight. Expenses already accrued, however, stand differently, although they may originally have been created by the separate action of each body, the statute in question recognizes them as claims so far as it may properly do so; of course, it does not upon its face and cannot recognize any matter as a claim which is within the restriction of section twenty-eight, article four, of the Constitution. Being claims against the State, then, they must be acted upon by the Board of Examiners before payment, unless the Legislature has the power to pass upon them without such action.

It is said by plaintiff that no evidence exists that such claims have not been, or will not be, submitted to the Board of Examiners; if not, yet this is legitimate matter for consideration, as the bill provides that the amount paid to the Sergeants-at-Arms is to be held and paid out by them respectively upon resolution of the Senate and Assembly, and the bill being objected to generally as unconstitutional, should be viewed in all its aspects.

It is argued by counsel for plaintiff that if the Board of Examiners should, under the Constitution, act upon a claim before the Legislature, may pass upon it; still, that this is a matter of form rather than of substance, and that the Constitution is directory rather than mandatory to the Legislature. The Constitution contains several articles, the general scope of each being indicated by its heading. The section under consideration is found in article five, entitled "Executive Department," and proposes, primarily, to give power to certain executive officers. In addition thereto it provides as follows: "And no claim against the State (except salaries or compensation of officers fixed by law) shall be passed upon by the Legislature without having been considered and acted upon by said Board of Examiners." No penalty is affixed should the Legislature disregard this provision, as in some other instances, as with regard to contracting debts above the prescribed amount, as in matter of prohibition to Judges of the Supreme Court absenting themselves from the State for more than ninety consecutive days, in which case the offending Judge is deemed to have vacated his office. Suppose the passage of a statute whereby the Legislature passes upon a claim against the State, which has never been acted upon by the Board of Examiners. Is such statute void, or only irregular? The mode prescribed by the Constitution has not been followed; what is the consequence? If there is nothing upon the face of the bill to show that the Board of Examiners have not acted, how is that fact to be ascertained? Courts have generally held that, if it be proper to look behind a statute regular on its face, to ascertain whether it had passed constitutionally, that such examination was not by jury trial of fact, but by inspection by the Court of the legislative record contained in the office of the Secretary of State, and of that only. Under this view it would be

impossible to say that the expenses now being considered had ·or had not been passed upon by the Board of Examiners, unless recourse was had to the records of such Board, and to inspect such record would be, if previous decisions as to the extent of inspection are to be followed, to make such record part of every bill passing upon a claim.

Again, the Constitution cannot be violated by permission of judicial authority, by indirection, and yet it would be difficult to suggest a remedy for an indirect violation with regard to this very section.   Supppose A had a claim against the State which he had not submitted to the Board of Examiners, and the Legislature knowing the fact passed the bill, saying nothing about the claim, but donating absolutely the amount.   Here there is no passing upon the claim, either so far as the face of the bill goes, nor practically; and yet an object is accomplished indirectly, which, it is said, cannot be directly.

So far as cotemporaneous legislation (always considered in force in constitutional interpretation) is concerned, it has treated the provisions of the section in question as inapplicable to legislative expenses.   At every session of the Legislature since the adoption of the Constitution a law similar to the present has been passed. (Stats. 1864–5, 329; Stats. 1866, 45; Stats. 1867, 159.)   Some members of the Constitutional Convention have been members of the Legislature.   The proposer of the constitutional section in question was in the Assembly of 1866.   The Attorney-General for the first two years of the State Government was also a member of the Constitutional Convention.

The section, as has been said before, confers no power save that of examination upon the Board, there being no power of adjudication conferred, why may not the Legislature, the ultimate tribunal, act without previous examination, that examination being of no binding force ?   While none of these considerations render it clear that the required pre-requisite of examination is of form rather than of substance, nor that the section, so far as the Legislature is concerned, is directory and not mandatory, yet it is impossible to decide the contrary without a reasonable doubt.   Such doubt ex-

isting, under the well-established rule of law, the statute cannot be declared unconstitutional, even as to the point now in question.

Says Mr. Sedgwick, in his Treatise on Statutory and Constitutional Law, page 482: " The leading rule in regard to a judicial construction of the constitutional provisions is a wise and sound one, which declares in cases of doubt every possible presumption and intendment will be made in favor of the constitutionality of the Act in question; and that the Courts will only interfere in cases of clear and unquestioned violation of the fundamental law. It has been repeatedly said that the presumption is that every State statute, the object and provisions of which are among the acknowledged powers of legislation, is valid and constitutional. And such presumption is not to be overcome, unless the contrary is clearly demonstrated."

" Courts ought not," says the learned Chancellor of the State of New York, " except in case admitting of no reasonable doubt, take upon them to say, that the Legislature has exceeded its power and violated the Constitution, especially when the legislative construction has been given to the Constitution by those who framed its provisions and cotemporaneous with its adoption." (See also *Fletcher* v. *Peck*, 6 Cranch, 87; *Ex parte McCollum*, 1 Cowen, 564; *Newell* v. *The People*, 3 Seld. 109; *Clark* v. *The People*, 26 Wend. 599; *Lane et al.* v. *Dorman et ux.*, 3 Scam. 238; *Foster et al.* v. *Essex Bank*, 16 Mass. 245; *Farmers' and Mechanics' Bank* v. *Smith*, 3 Serg. & R. 63; *Brown* v. *Buzan*, 24 Ind. 194; *Morrison* v. *Springer*, 15 Iowa, 347; *Adams* v. *Howe et al.*, 14 Mass. 342.)

Such being the case, the defendant has unlawfully refused to issue the five thousand-dollar warrant, and the writ must issue as prayed.

Let the writ issue.

By JOHNSON, J.:

I concur in the reasoning and conclusions attained in the opinion of Justice Whitman, except so far as it covers the last branch of the case, respecting the five thousand-dollar warrant, from which I dissent, for reasons which will be embodied in a separate opinion.