## *In re* STATE WARRANTS.

1. Appropriations from the assessed but uncollected revenues of the state, and the issuance of warrants in pursuance thereof to defray current expenses, is not the incurring of an indebtedness, within Const. art. 13, sec. 2, which provides that to make public improvements, or to meet extraordinary expenses, or deficits or failure in revenue, the state may contract debts never to exceed, with previous debts, $100,000, and no greater indebtedness shall be incurred, except to repel invasion, suppress insurrection, or defend the state or United States in war.

2. Revenues of the state, assessed and in process of collection, are to be considered as constructively in the treasury, and may be appropriated and treated as though actually there.

3. The fact that warrants issued in anticipation of such assessed revenues draw interest does not make the issuance of the warrants an incurring of an indebtedness to the extent of such interest, within Const. art. 13 sec. 2, where such warrants, with respect to interest, are not different from other warrants which may properly be drawn and issued.

(Syllabus by the Court. Opinion filed Feb. 8, 1895.)

Advisory opinion of the judges of the supreme court as to the legality of an act of the legislature to provide for the issue of warrants by the state to defray current expenses, based on revenues assessed and not yet collected.

Supreme Court Chambers.

Pierre, S. D., February 8, 1895.

To His Excellency, Charles H. Sheldon, Governor:

We have the honor to acknowledge the receipt of your communication of this date, accompanied by a copy of an act, with amendment thereto, which has just passed the legislature, entitled "An act to provide for the issue of warrants by the state of South Dakota, to defray current expenses, based upon revenues assessed and not yet collected," asking our opinion as to

the legality of the same. We recognize this as one of the occasions upon which the constitution of the state authorizes you to call upon us for our opinion; and while the obvious importance of a speedy answer renders impracticable so thorough an examination of the question, or so careful a formulation of our views in respect thereto, as its gravity makes desirable, we have the honor to present the following as a reply to the question you propound:

The act provides:

"Section 1. That to protect the public credit and enable the state to provide for current expenses, the state treasurer, with the advice and consent of the governor and auditor, is hereby authorized and directed, whenever he finds it necessary to do so in order to provide for the actual and necessary current expenses of conducting the public business of the state, to issue warrants based upon the revenues of the state already assessed for the current and preceding years but not yet collected and in an amount never exceeding the amount of such revenues so assessed and not yet collected and for the purpose only of providing for the immediate and necessary current expenses of the state as aforesaid. Said warrants shall not be negotiated for less than their face value, and shall be subject to the same provisions of law as to the rate of interest thereon and otherwise as all other warrants on the state treasury. All money received from the negotiation of such warrants shall be applied only to the payment of the necessary and actual current expenses of the state. And all money hereafter received or collected into the state treasury from or on account of such 'revenues assessed but not yet collected,' or so much thereof as may be necessary, is hereby set apart and appropriated to the payment of such warrants, if any, as may be issued in pursuance of the foregoing provisions, and the state treasurer is hereby authorized and required to make payment of the same from such funds so hereby appropriated.

"Sec. 2. This act shall not be construed so as to authorize in any way the increase of the public debt, it being the in-

tention to issue said warrants within the limits of the revenue already assessed for the current year and preceding years but not yet paid."

This law is valid, of course, unless it violates some provision of the constitution; for, as a general principle, what the state constitution does not prohibit, the legislature may do. While your question is general, we take it that the special point of inquiry is the relation of this act to those provisions of the state constitution designed to regulate and limit the indebtedness of the state.

The general financial system of the state, as provided by the constitution, by and under which revenue shall be raised and public moneys expended, is shown and developed in the following general provisions:

"Art. 11, § 1. The legislature shall provide for an annual tax sufficient to defray the estimated ordinary expenses of the state, for each year, not to exceed in any one year, two mills on each dollar of the assessed valuation of all taxable property in the state, to be ascertained by the last assessment made for state and county purposes. And whenever it shall appear that such ordinary expenses shall exceed the income of the state for such year, the legislature shall provide for levying a tax for the ensuing year, sufficient with other sources of income, to pay the deficiency of the preceding year, together with the estimated expenses of such ensuing year."

"Art. 11, § 9. All taxes levied and collected for state purposes shall be paid into the state treasury. No indebtedness shall be incurred or money expended by the state, and no warrant shall be drawn upon the state treasurer except in pursuance of an appropriation for the specific purpose first made."

"Art. 12, § 1. No money shall be paid out of the treasury except upon appropriation by law and on warrant drawn by the proper officer."

"Art. 13, § 2. For the purpose of defraying extraordinary expenses and making public improvements, or to meet casual

deficits or failure in revenue, the state may contract debts never to exceed, with previous debts, in the aggregate $100,000, and no greater indebtedness shall be incurred except for the purpose of repelling invasion, suppressing insurrection, or defending the state or the United States in war, and provision shall be made by law for the payment of the interest annually, and the principal when due, by tax levied for the purpose, or from other sources of revenue; which law providing for the payment of such interest and principal by such tax or otherwise shall be irrepealable until such debt is paid."

Thus, upon the legislature is imposed the duty of providing by an annual tax a sufficient revenue to meet the estimated ordinary expenses of each year, not exceeding the limit of two mills, with power to provide for levying a further tax to pay a deficiency in the preceding year, if the ordinary expenses of the state shall exceed its income in such year. Our views as to the authority of the legislature under this latter provision were expressed to you in our communication of January 14, 1893 (54 N. W. 417), in response to your request therefor.

By general law the legislature has provided for the levy of an annual tax for meeting the ordinary expenses of the state. By so providing, in a constitutional manner, for the levy of a sufficient tax, it has provided a revenue, to the extent of the tax, for the payment of the ordinary or current expenses of the state. It may then make appropriation of such revenue for diverse and specific purposes, included within the ordinary expenses of the state, and may authorize the issue of evidence of such appropriation in the form of warrants, without incurring an indebtedness therefor; within the meaning of said section 2, art. 13. of the constitution. If this were not so, then the appropriations of each legislature in excess of the cash actually in the hands of the state treasurer, and in the fund from which such appropriations were made, would, to the extent of such excess, constitute the creation of a debt against the state. It is well understood that the aggregate of the general appropria-

tions of each legislature in this, as in other states, generally greatly exceeds the amount of actual cash in the hands of the state treasurer when such appropriations are made. The taxes levied and in process of collection are treated as in the state treasury, though not yet actually paid over to the state treasurer. It has been ruled in several cases, and by high judicial authority, that state funds, so in sight, but not yet in hand, may be anticipated and appropriated as though actually in the possession of the state treasurer. In State v. McCauley, 15 Cal. 430, the learned Chief Justice FIELD, speaking for the court said:. ''The eighth article [the constitutional article limiting state indebtedness, and corresponding to our section 2, art. 13] was intended to prevent the state from running into debt, and to keep her expenditures, except in certain cases, within her revenues. These revenues may be appropriated in anticipation of their receipt as effectually as when actually in the treasury." This case, decided in 1860, has been subsequently several times approved and followed by the supreme court of California. See McCauley v. Brooks, 16 Cal. 28; Koppikus v. Commissioners, Id. 253; and People v. Pacheco, 27 Cal. 175. The same question was before the supreme court of Ohio in State v. Medberry, 7 Ohio St. 529, where the proposition of the California court was fully endorsed, subject only to the restriction based upon a provision of the Ohio constitution that such appropriations of incoming revenues should not extend beyond the limit of the two years next ensuing. The court says: ''So long as this financial system is carried out in accordance with the requirements of the constitution [two years' restriction], unless there is a failure or defect of revenue, or the general assembly have failed, for some cause, to provide revenue sufficient to meet the claims against the state, they do not and cannot accumulate into a debt. Under this system of prompt payment of expenses and claims as they accrue, there is, undoubtedly, after the accruing of the claim, and before its actual presentation and payment, a period of time intervening

in which the claim exists unpaid; but to hold that for this reason a debt is created would be the misapplication of the term 'debt', and substituting for the fiscal period a point of time between the accruing of a claim and its payment, for the purpose of finding a debt; but appropriations having been previously made, and revenue provided for payment, as prescribed by the constitution, such debts, if they may be so called, are in fact, in respect of the fiscal year, provided for with a view to immediate adjustment and payment. Such financial transactions are not, therefore, to be deemed debts." The same question is elaborately discussed in State v. Parkinson, 5 Nev. 15, and the same conclusions reached as by the California and Ohio courts. It would seem, therefore, that, both upon authority and principle, we should be justified in saying that appropriations from the assessed, but not yet collected revenues of the state, and the issuance of warrants in pursuance and in evidence thereof, is not the incurring of an indebtedness, within the meaning of section 2, art. 13, of the. constitution.

At first thought, it may seem difficult to maintain that the issuing of an obligation to pay is not the incurring of an indebtedness; but as aptly said by the court in State v. Parkinson, *supra*, "similar language [prohibiting state indebtedness beyond a designated limit] in the constitutions of other states had judicial interpretation before the foundation or adoption of the constitution of the state, * * * and thus the legal presumption arises that the language was used with reference to such interpretation." Critically considered, it may constitute the incurring of an indebtedness; but it is not an indebtedness repugnant to the constitution, because its payment is legally provided for by funds constructively in the treasury. If the drawing of a warrant upon the state treasury is the incurring of indebtedness by the state, then the drawing of such warrant would violate the constitution, even if there was money in the state treasury to pay it, if the constitutional limit of indebtedness had been reached; for there must always be some time in-

tervening between the drawing of the warrant and its payment, and during such time the indebtedness of the state would be increased beyond the constitutional limit.    Such an interpretation of the constitutional limitation would obviously be too hypercritical to be practicable or reasonable.    It being once established, as we think it is by the authorities already cited, that the revenues of the state, assessed and in process of collection, may be considered as constructively in the treasury, they may be appropriated and treated as though actually and physically there; and an appropriation of them by the legislature does not constitute the incurring of an indebtedness, within the meaning of section 2, art. 13.

In the light of, and following these conclusions, the answer to the immediate question submitted to us does not seem to involve serious doubt or difficulty.    The legislature has, by this law, set apart and appropriated, as we have seen it may do, a portion of the assessed and incoming revenues of the state, to be exchanged for or converted into ready cash, for immediate use in meeting the current expenses of the state.    If the legislature may lawfully make appropriation from such revenues, in various and different amounts, to meet specific items of expense, we can see no objection, in principle, to its aggregating a number of such amounts, and covering the appropriation therefor all in one act.    To illustrate: It has already been shown by the authorities cited that, although there may be no funds actually in the hands of the state treasurer, yet the legislature may lawfully appropriate from the incoming revenues of the state a sufficient amount to pay the *per diem* and mileage of the members of the legislature, without incurring an indebtedness therefor, within the meaning of the constitutional prohibition.    The several members take their warrants, and hold them against the incoming funds so appropriated until they come within the physical reach and control of the state treasurer.    Would it import a new or different principle if one member should take them all, and advance to the individual members the several

amounts due them? We think not. But, if a member may do so, there is no reason why a third party may not; and this, in effect, is just what the law under consideration proposes to have done. It may be suggested that the warrants authorized by this law will draw interest, and to that extent, if no more, an objectionable indebtedness is incurred; but, in respect to interest, the warrants authorized by this law are not different from those which we have already seen may properly be drawn and issued. If the issuance of the warrant creates no unconstitutional debt, how can the incident of interest, which the statute imposes as a compensation or allowance for delay, make that an unconstitutional debt which was not so before? As we read State v. Parkinson, *supra*, that case, both as to facts and questions of law, was entirely analogous to that now presented to us. The law now before us expressly sets apart and appropriates a sufficient amount of the accruing funds of the state to meet and pay whatever of these representative warrants may be issued. It simply provides for the reimbursement of the party who immediately pays, or furnishes the money to pay, such current expenses of the state as the legislature may now lawfully make appropriations for. The revenues so appropriated are as effectually set apart and devoted to the payment of the current expenses of the state as though the representative warrant or warrants did not intervene, and, to the extent so appropriated, they cannot be used for any other purpose.

In line with the foregoing views, and influenced thereby, we conclude, and express the opinion, that there is nothing in the general plan or the terms of the act which conflicts with the constitution of the state, and that warrants issued in pursuance thereof, and under the conditions therein named, will be legal and binding upon the state.

Very respectfully, your obedient servants,

.DIGHTON CORSON,
A. G. KELLAM,
H. G. FULLER,
Judges of Supreme Court,