SCHAAF, Plaintiff, v. SOUTH DAKOTA RURAL CREDITS BOARD et al., Defendants.

(164 N. W. 964.)

(File No. 4262.   Opinion filed October 27, 1917.)

1.  States—Rural Credits—System of Rural Credits—Farm Loans of State Moneys to Individuals, Etc., Constitutionality—Provisions Construed—Purpose of Law.

Under Const., Art. 13, Sec. 1, providing that neither the state nor any county, etc., shall loan or give its credit or make donations to or in aid of any individual, association, or corporation, except for necessary support of the poor, as amended by constitutional amendment adopted by vote of people of 1916, providing that the state or any county, etc., may establish and

maintain a system of rural credits and thereby loan money and extend credit to people of this state upon realty security in such manner and upon such terms and conditions as may be prescribed by general law, held, that (a) said constitutional provision before the amendment would have prohibited the Legislature from enacting a rural credits law such as Laws 1917, Chaps. 333 and 334, which provide for establishment and maintenance of a system of rural credits for loaning of money by the state upon farm loans within this state, authorizing it to borrow money on warrants and bonds, on the good faith and credit of state, creating a rural credits board for management of said system, defining the powers and duties thereof, and making an appropriation of $200,000 to be used in establishing and maintaining said system, and providing for issuing and negotiation of bonds for creation of a rural credits fund from which to maintain such system and make such loans; but (b) that said amendment undertook to and did authorize and empower the Legislature to establish such system. So held, as against the objections that said law is unconstitutional because repugnant to and in contravention of Const., Art. 6, Sec. 2, providing that no person shall be deprived of life, liberty or property without due process of law, and Sec. 13, providing that private property shall not be taken for public use without just compensation, and Sec. 17, providing that no tax or duty shall be imposed without consent of the people or their representatives in the Legislature, and all taxes shall be equal and uniform, and Sec. 18, providing that no law shall be passed granting to any citizens, class of citizens or corporations privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations, and Art. 11, Sec. 2, providing that all taxes shall be uniform on all property and shall be levied and collected for public purposes only, and Art. 13, Sec. 2, providing that for purposes of defraying extraordinary expenses and making public improvements, or to meet casual deficits or failure in revenues, the state may contract debt never to exceed with previous debts in the aggregate $100,000, and no greater indebtedness shall be incurred except for purpose of repelling invasion, suppressing insurrection, or defending the state or the United States in war. That the expressed purpose of the rural credits laws is to foster and encourage agriculture, dairying and live stock raising, and development and improvement of farm lands within this state. That to expressly give legislative power to enact such a rural credits law such amendment was so adopted.

2.   Constitutional Law—Plenary Legislative Power Under—Express Grant of, What Implied Thereby—Conflicting Constitutional

**Provisions, Effect on Power Expressly Granted—Rural Credits Laws, How Affected.**

Ordinarily provisions of a state constitution are limitations upon plenary power of state law making body. So held, construing Const., Art. 13, Sec. 1, prohibiting the state, etc., from loaning or giving its credit, etc., in aid of individuals, etc., as affected by the amendment thereof in 1916, authorizing creation and administration of a rural credits system. Held, further, that where a power is expressly granted to a legislative body everything necessary to effect and carry out the object and purpose of the express power thus granted is also by necessary implication granted to the Legislature and the executive officers entrusted with duty of administering such power. It therefore necessarily follows that every other provision of the state constitution in conflict with the express power thus granted and its substantial fulfillment, are to that extent modified and qualified and made subservient to purposes of the express power so granted. Therefore all constitutional provisions which would otherwise have prohibited the enactment of such rural credits system laws have been modified and qualified and made subservient to the express and necessarily implied provisions of the 1916 amendment; under which amendment the Legislature was empowered and authorized to establish and maintain any adequate system of rural credits suitable to conditions existing in this state, not in conflict with the amendment, and to enact any and all laws necessary to establish an adequate and complete rural credits system, reasonably suited to said conditions. That it is reasonable to infer that a large portion of the existing mortgage indebtedness upon farm lands in this state would be subject to operations of the rural credits system so established; that expressly clothing the Legislature with such power meant to establish any adequate system, appropriate and sufficient, under said conditions and needs of the state, to accomplish the purpose for which the amendment was adopted.

3.    States—Rural Credits Board—Loaning State Moneys on Realty Securities—Constitutional Limitation of Indebtedness, Whether Exceeded Under Rural Credits Laws.

Under Laws 1917, Chaps. 333, 334, establishing a rural credits system and appropriating moneys therefor, held, construing state laws in connection with Const., Art. 13, Sec. 2, providing that for purpose of defraying extraordinary expenses and making public improvements, or to meet casual deficits or failure in revenue the state may contract debt never to exceed with previous debts in the aggregate $100,000, and no greater indebtedness shall be incurred except for purpose of repelling invasion, suppressing insurrection, or defending the state or United States in war, that the contention that the necessary

funds for making such rural credit loans might be procured by
direct taxation, and without exceeding said $100,000 limit of .
indebtedness, is untenable, impracticable and unreasonable, and
would result in creating but a small fraction of funds necessary
for an adequate rural credits system suitable to needs and
conditions existing in this state, such as contemplated by the
people when adopting the 1916 amendment to Const., Art. 13,
Sec. 1, authorizing establishment of such rural credits system.

4. **Constitutional Law—Due Process—Rural Credits Law, Federal
Fourteenth Amendment, Whether Violated by?—Federal Pro-
vision Construed—Classifying Legislative Subjects—Regula-
tion, Rule.**

Laws 1917, Chaps. 333-334, establishing a rural credits
system and appropriating moneys with which to administer the
same, are not in violation of the Fourteenth Amendment to
the Federal Constitution, providing that no state shall deprive
any person of life, liberty or property without due process of
law, nor deny to any person within its jurisdiction the equal
protection of the laws. That the purpose of said federal
amendment was not to prevent states from classifying the
subjects of legislation and making different regulations as to
the property of different individuals differently situated; that
said constitutional provision is satisfied if all persons similarily
situated are treated alike in privileges conferred or liabilities
imposed; the test being whether or not the classification rests
upon some difference bearing a reasonable and just relation
to the act in respect to which the classification is proposed,
though they need not always depend on scientific or marked
distinctions in things, persons or relations, but it suffices if
practical and not palpably arbitrary.

5. **Rural Credits Laws—State Board—Taxation of Non-beneficiary's
Property, Whether Discriminatory Taxation—Federal Consti-
tution Compared.**

In a state so exclusively agricultural as this, whatever will
foster, encourage, develop and improve farm property will
result in benefit to urban property owners. In this state the
value of city property depends to a great extent upon development
and improvement of surrounding farm land, and whatever
tends thereto tends also for the general good and welfare of
the entire people of this state, whether city or otherwise; and
it is not, under such circumstances, unjust discrimination, to
tax city property for the purpose of maintaining a rural credits
system such as is provided in Laws 1917, Chaps. 333-334. So
held, in an application by a citizen and owner of taxable urban
realty, for a writ of prohibition against the South Dakota Rural
Credits Board and its members, prohibiting defendants from
borrowing, on the faith and credit of the state, $200,000 for

the purpose of using the same in making loans to individuals, etc., upon real estate securities.

6.  **Rural Credits Laws—Passage of Same, Whether in Accordance With Constitutional Provisions.**

Laws 1917, Chap. 333-334, establishing a system of rural credits, **held,** to have been regularly and lawfully passed and enacted in accordance with the constitutional provisions of this state relative to enactment of laws; and said laws are now in full force and effect.

Gates, P. J., concurring specially.

Original application in Supreme Court, by Leslie L. Schaaf, against the South Dakota Rural Credit Board, and Peter Norbeck, C. M. Henry, A. W. Ewert, J. E. Ziebach, and Alfred Zoske, members of and composing said board, for a writ of prohibition prohibiting defendants from borrowing $200,000 upon the good faith and credit of the state of South Dakota, to be used in administrating the rural credit laws.   Application denied.

*Charles E. DeLand,* for Plaintiff.

*C. C. Caldwell,* Attorney General, *Byron S. Payne,* Assistant Attorney General, and *John Sutherland,* for Defendants.

(1) To point one of the opinion, Plaintiff cited:  State v. Scougal, 3 S. D. 55, 15 L. R. A. 477, 44 Am. St. Rep. 756; State v. Doran, 28 S. D. 486; C., M. & St. P. Ry. Co. v. Westby, 178 Fed. 619; Bailey v. Sioux Falls, 28 S. D. 118; Wells-Fargo Co. v. Johnson, 214 Fed. 180; Haggart v. Alton, 29 S. D. 509. St. Germain Irr. Ditch Co. v. Hawthorne D. Co., 32 S. D. 260; Allen v. Jay, 60 Me. 124 (137-8); Lowell v. City of Boston, 111 Mass. 454; Turner v. Hand County, 11 S. D. 348; C., M. & St. P. Ry. Co. v. Kennedy, 232 U. S. 58, 58 L. ed. 762; Smithwick School Dist. v. Lincoln School Dis., 37 S. D. 38; Freese v. City of Pierre, 37 S. D. 433, 158 N. W. 1013; Caldwell v. Pierson (S. D.) 159 N. W. 124.

(5) To point five of the opinion, Plaintiff cited:  3 L. R. A. Dig. 2782; Bush v. Orange Co. Suprs., 159 N. Y. 212 (217); Cooley on Const. Lim. (6th ed.) 280; Cooley on Taxation (2d ed.) 137; Citizens Sav. Bank v. Topeka, 20 Wall. 655, 22 L. ed. 455; Taber v. Erie Co. Suprs., 131 N. Y. 432; Cooley on Taxation, (2d ed.) pp. 115-117, particularly p. 126; and note on p. 127; Allen v. Jay, 60 Me. 124, 11 Am. Rep. 185; Hill v. Rae (Mont.) L. R. A. 1917A, 495 (500); 37 Cyc. 749, and cases

cited; Hutchinson v. Ozark Land Co., 57 Ark. 554, 22 S. W. 173, 38 Am. St. Rep. 258; Const., Art. 21, Secs. 6, 7.

McCOY, J. [1] By application for a writ of prohibition plaintiff has assailed the constitutionality of chapters 333 and 334, Laws of 1917. These legislative acts by their terms purport to provide for the establishment and maintenance of a system of rural credits for the loaning of money by the state upon farm lands within this state; authorizing the state to borrow money on its warrants and bonds, secured by the good faith and credit of the state; creating a rural credit board for the management of said rural credit system, and defining the powers and duties thereof; making an appropriation of $200,000 to be used in establishing and maintaining said system; and providing for the issuing and negotiation of bonds for the creation of a rural credits fund from which to maintain such system and make loans upon said lands. The expressed purpose of these acts is to foster and encourage agriculture, dairying, and live stock raising, and the development and improvement of farm lands within this state. It is alleged in the petition and admitted by the defendant that the plaintiff is a taxpayer and owns property upon which he could not procure a loan under said rural credit enactments; that said rural credit board created by said enactments is now about to enter into an agreement to borrow $200,000 on the good faith and credit of the state, and to issue and deliver and sell the bonds of the state of South Dakota in said amount, the proceeds of such bonds to be used in loaning money on farm real estate, and that said board is also threatening and planning to borrow other and larger sums of money for said purpose upon the faith and credit of the state. It is the contention of plaintiff that said legislative enactments are unconstitutional and void, in that they are repugnant to and in contravention of sections 2, 13, 17, and 18, art. 6, and section 2, art. 11 and section 2, art. 13, and that said laws were not passed in conformity with the provisions of article 3, of our state Constitution. Section 2, art. 6, provides that no person shall be deprived of life, liberty, or property without due process of law; section 13 provides that private property shall not be taken for public use without just compensation; section 17 provides that no tax or duty shall be imposed without the consent of the people or their representatives in the Legislature,

and all taxation shall be equal and uniform; and section 18 provides that no law shall be passed, granting to any citizen, class of citizens, or corporation privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations.  Section 2, art. 11, provides that all taxes shall be uniform on all property, and shall be levied and collected for public purposes only; and section 2, art. 13, provides that for the purpose of defraying extraordinary expenses and making public improvements, or to meet casual deficits or failure in revenue, the state may contract debt never to exceed with previous debts in the aggregate $100,000, and no greater indebtedness shall be incurred except for the purpose of repelling invasion, suppressing insurrection, or defending the state or the United States in war. But for the amendment to section 1, art. 13, of our state Constition, adopted by the people of this state at the general election in November, 1916, we are of the view that the legislative acts in question would be void and in contravention of several of the foregoing mentioned provisions of our state Constitution.  Prior to the said amendment of November, 1916, section 1, art. 13, among other things, read as follows:

"Neither the state nor any county, township or municipality shall loan or give its credit or make any donations to or in aid of any individual, association or corporation, except for the necessary support of the poor."

Clearly this provision of the Constitution before its amendment would have prohibited the Legislature from enacting a rural credits law such as is in question here.  By the 1916 amendment the people of this state undertook to and did authorize the Legislature, and gave to it power to establish and maintain a rural credit system, the said amendment being as follows.

"That the state or any county or two or more counties jointly may establish and maintain a system of rural credits and thereby loan money and extend credit to the people of this state upon real estate security in such manner and upon such terms and conditions as may be prescribed by general law."

See Laws 1915, c. 233.

[2] This is a broad, sweeping, unconditional, unlimited, and unqualified amendment, which is the last mandate of the people, in whom resides all fundamental lawmaking power, authorizing and

empowering the Legislature to establish a rural credits system and prescribe the terms and conditions thereof. Ordinarily the provisions of a state Constitution are limitations upon the plenary power of the state lawmaking body. Under the broad and comprehensive effect of section 1, art. 13, as it existed prior to 1916, a rural credits law, such as the one in question, could not have been legally enacted by our Legislature in the exercise of its plenary power. To expressly give power to the Legislature to enact such a law the said amendment was adopted at the 1916 general election. Under the well-established rules governing the construction of Constitutions, adhered to by the courts of this country, where a power is expressly granted to a legislative body, everything necessary to effect and carry out the object and purposes of the express power thus granted is also, by necessary implication, granted to the Legislature and the executive officers who are intrusted with the duty of administering such power. It therefore necessarily follows that every other provision of the state ·Constitution in conflict with the express power thus granted, and its substantial fulfillment, are to that extent modified and qualified and made subservient to the purposes of the express power so granted. We are therefore of the opinion that all the provisions of our state Constitution which would otherwise have prohibited the enactment of said rural credits system law have been modified and qualified and made subservient to the express and necessarily implied provisions of the 1916 amendment; that under the provisions of this amendment the Legislature was empowered and authorized to establish and maintain any adequate system of rural credits suitable to the conditions existing in this state, not in conflict with this amendment; that by this amendment the people of this state fully and completely authorized the Legislature to enact any and all laws necessary to establish an adequate and full and complete rural credit system, such as might reasonably be suited to the condition applicable to the state of South Dakota. Approximately there are 49,000,000 acres of land in this state, the greater majority of which is agricultural. About 16,000,000 acres, or one-third thereof, are now in a state of actual cultivation. There is now in this state a mortgage indebtedness upon farm lands of about $25,000,000. It is reasonable to infer that a large portion of this mortgage indebtedness would be the

subject of and come under the operation of the rural credit system established under the laws in question. When the Legislature was expressly clothed with power to establish and maintain a system of rural credits; that meant power to establish any adequate system appropriate and sufficient, under the existing conditions and needs of the state, to accomplish the purpose for which the amendment was adopted. It is not for this court to say that some other or better way might have been enacted.

[3] Some contention has been advanced that the necessary funds for making loans under such system might be procured by some system of direct taxation, and without going beyond the limit of $100,000 indebtedness. We are of the view that such contention is untenable, impracticable, and unreasonable, and would not result in creating the one-thousandth part of the funds necessary for an adequate rural credit system, suitable for the needs and conditions existing in the state, such as were in contemplation of the people when adopting said 1916 amendment. We are of the view that the Legislature was invested by the 1916 amendment with full power and authority to enact such legislation as in its wisdom it might deem proper to provide the necessary funds to render the power thus granted effective and adequate as applied to the existing conditions within this state in the light of which the people of the state adopted said amendment.

[4, 5] It is urged that the enactments in question are in violation of the Fourteenth Amendment to the federal Constitution. It is the contention of plaintiff that the effect of this rural credits law deprives him of his property without due process of law, and denies to him the equal protection of the law guaranteed by the Constitution. We are of the view that this contention is not tenable. It was not the purpose of this amendment to prevent the states from classifying the subjects of legislation and making different regulations as to the property of different individuals differently situated. This provision of the Constitution is satisfied if all persons similarly situated are treated alike in privileges conferred or liabilities imposed, the test being whether or not the classification rests upon some difference bearing a reasonable and just relation to the act in respect to which the classification is

25—Vol. 39, S. D.

proposed, though it need not always depend on scientific or marked distinctions in things or persons or relations; but it suffices if it is practical and not palpably arbitrary.  9 Fed. St. Ann., p. 546.  In Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923, the court, among other things, said:

"Neither the amendment—broad and comprehensive as it is —nor any other amendment was designed to interfere with the power of the state, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity.  From the very necessities of society, legislation of a special character, having these objects in view, must often be had in certain districts, such as for draining marshes and irrigating arid plains.  Special burdens are often necessary for general benefits, for supplying water, preventing fires, lighting districts, cleaning streets, opening parks, and many other objects. Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed, not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little individual inconvenience as possible, the general good, though, in many respects, special in their character, they do not furnish just ground for complaint if they operate alike upon all persons and property under the same circumstances and conditions."

The question involved in Hill v. Rae, 52 Mont. 378, 158 Pac. 826, L. R. A. 1917A, 495, was very similar to the question involved in this case.  In that case the farm loan act of the state of Montana, being chapter 28, Laws of 1915, was involved.  In that case it was urged, the same as here, that the farm loan act was in violation of the Fourteenth Amendment; but the court held that the classification of real property into urban and nonurban, in establishing a system for making loans solely on nonurban property, was not an unreasonable or unconstitutional classification within the purview of the Fourteenth Amendment.  In a state so exclusively agricultural as this, whatever will foster, encourage, develop, and improve farm property will result in benefit to the urban property owners.  In this state the value of city property depends to a great extent upon the development

and improvement of surrounding farm land. Whatever tends to develop and improve farm lands tends also for the general good and general welfare of the entire people of this state, whether city or otherwise, and it is not unjust discrimination, under such circumstances, to tax city property for the purpose of maintaining a rural credit system such as is involved in this action. Therefore we are of the opinion that the rural credits law in question is neither in conflict with the Fourteenth Amendment to the federal Constitution nor any of the provisions of the Constitution of this state. We are also of the view, after careful examination, that said enactments in question were regularly and lawfully passed and enacted in accordance with the constitutional provisions of this state relative to the enactment of laws, and that said chapters 333 and 334, Laws of 1917, are now in full force and effect.

The application for writ of prohibition is denied.

GATES, P. J. (concurring specially). The majority opinion says of the 1916 amendment to article 13, § 1, of the Constitution:

"To expressly give power to the legislature to enact such a law the said amendment was adopted."

The writer of the opinion said the same thing in his separate advisory opinion to the Governor, 38 S. D. 649, 162 N. W. 542. I think such statement violates the universal rule of construction of state Constitutions. When the people of this state adopted the Constitution they said:

"The legislative power of the state shall be vested in a legislature." Article 3, § 1.

In my opinion that was the gift or grant of legislative power, and no subsequent gift or grant of legislative power to the Legislature has ever been made, or attempted to be made. It was a plenary power, except as otherwise restricted in the Constitution or by amendment thereto. One of these restrictions was contained in article 13, § 1, which, prior to the 1916 amendment, prevented the state from engaging in the farm loan business. It is my view that the amendment of 1916 was not a grant of power, but was a mere removal of a restriction theretofore existing upon the exercise of such power. That being the case, we must view the matter as though there were nothing specific in the

Constitution, either pro or con with reference to engaging in the farm loan business. Without any restriction in the Constitution the legislative power is unquestionably broad enough to sanction such business. But there were other restrictions upon the legislative power, one of which was contained in article 13, § 2, with reference to limitation of indebtedness. The majority are of the view that this limitation of indebtedness was removed as to the farm loan business substantially because it would not be practical to organize such business upon a $100,000 limit of indebtedness. It seems immaterial to me whether the state must borrow $100,000, $1,000,000, or even more, in order to successfully transact the business. Even if the constitutional amendment were a grant of power instead of the removal of a restriction, and even if the obligations to be issued constitute a debt within the meaning of article 13, § 2, yet it would not necessarily follow that the law enacted by the Legislature provides the only method of instituting and carrying on the farm loan business. It would not necessarily follow that to successfully carry on the business the state must incur a debt in excess of the constitutional limit.

In my opinion article 13, § 2, has not been affected by the removal of the restrictions contained in the 1916 amendment. Let me illustrate by another clause in article 13, § 1. The loaning or giving of credit or making donations was by the original section prohibited "except for the necessary support of the poor." Section 2 of said article does not except the support of the poor from the $100,000 limit of indebtedness. Clearly an indebtedness incurred to provide support for the poor would be an indebtedness within the meaning of that section. Suppose section 1 is amended by striking out the above exception. Can it be logically urged that there would then be no limit to which the state might go in providing for the support of the poor? It seems to me that the mere statement of the case carries with it its own answer. I think the matter before us should be solved according to the views of the majority of the Judges in their opinion to the Governor, 38 S. D. 635, 162 N. W. 536, to-wit: That the obligations to be incurred under the Rural Credits Act do not constitute an indebtedness within the meaning of article 13, § 2. I am further of the opinion that if, by reason of maladministration of the rural credit funds, this state should not be able to meet its obligations

arising from the carrying out of the act, still the deficit would not be an indebtedness within the meaning of the section of the Constitution last cited, because provision is made for a tax levy by the Tax Commission to take care of such deficit, and because a debt arising out of a tort is not such a debt as is contemplated by said section of the Constitution.

Upon the other phases of the matter .I agree with the majority opinion, and therefore concur in the view that the application for the writ of prohibition was properly denied.

WHITING, J.   Having been absent from the state at the time of the oral argument herein, as well as at the time of the handing down of the court's decision, I feel constrained to refrain from taking any part in the formal opinion, though present in court at the time of its filing.