MACKEY, Plaintiff, v. REEVES, State Auditor, Defendant.

(175 N. W. 359.)

(File No. 4635. Opinion filed December 16, 1919. Rehearing denied January 13, 1920. Case Still Pending.)

1. **Mandamus—Mandate to State Auditor for Warrant—Appropriation for Injury to Militiaman—Writ Recital as Pleading.**

The statement in Laws 1919, Ch. 39, recited in an alternative writ, towit: That the sum claimed by plaintiff was "to compensate him for injuries received while in the militia service of the state," is considered an allegation of fact, which together with allegations that the Legislature has appropriated money for payment of the amount claimed, upon presentation of proper voucher, and a receipt for warrant (refused by state auditor) to be issued by state treasurer, constituted the pleadings demurred to and claimed by plaintiff to be sufficient to warrant relief demanded.

2. Constitutional Law—Amendments—State Industries for Public Purposes—Good Roads, Supplying Coal, Manufacturing, Sale of Cement, Of Electric Current, Mining, Sale of Coal, Internal Improvements, Operation of Elevators, Etc., State Loans, Credits as Public Necessities, Owning Operating Stock—Constitution as Limitation of Legislative Powers.

Pursuant to Chap. 2, Special Session 1916, Sec. 9, declaring maintenance of good roads and supplying of coal to people from state lands, to be works of necessity, etc., in which state may engage, when adopted by vote of people, was added to Const., Art. 13; amended Sec. 1, Art. 13, Const., was adopted pursuant to Laws 1917, Ch. 163; at the 1918 Special Session other amendments thereto were proposed, and adopted by people, in connection with Sec. 1; Secs. 10 and 11 declared manufacture, distribution and sale of cement, etc., and (Secs. 12, 13) the manufacture, etc., of electric current, to be works of public necessity and importance in which state may engage, Secs. 14, 15 declaring mining, etc., of coal to be similar works, Sec. 16 authorized state to engage in works of internal improvement, etc.; and pursuant to Laws 1917, Ch. 168, Const., Art. 29 was added, providing for state operation of elevators, warehouses, flour mills and packing houses. Held, each of these amendments authorized Legislature to enact by a two-thirds vote, etc., laws under which state may engage in the named enterprises; and each of said enterprises is specifically declared to be of a public character and a public necessity. Prior to adoption of such amendments such industries were decreed private enterprises, and under terms of original Sec. 1, Art. 13, Const, state was prohibited from engaging therein or lending credit or making donations in aid thereof, and also from engaging in works of internal improvement, even though of public character. Sec. 1, as so amended, authorizes state to engage in works of internal improvement, and authorizes it to own and conduct business enterprises, loan its credit in aid of any association or corporation, organized for purpose of developing resources and improving economic facilities of the state. Held, further, that the nature and character of said

enterprises in which state may engage, are limitations upon legislative powers.

3.  Same—Law—Said Amendments as Fundamental Change in Governmental Policy Re Development of State Resources, Economic Facilities—Whether Abrogating Provision Re Taxes for Public Purposes Only—Prohibition Against Donations, Constitutional Status Re.

   The aforesaid amendments evidence a fundamental change in governmental policy, primarily designed to effect early development of state resources and economic facilities; but held, they do not evidence intent to abrogate or modify const., Art. 11, Sec. 2, declaring that taxes shall be levied and collected, for public purposes only; which latter provision inhibiting collection and expenditure of public moneys for private benefit, as distinguished from public purposes for benefit of a private person, is clearly contemplated and maintained throughout all said amendments to the Constitution; and nothing contained in Art. 13, as amended, was intended to repeal or modify said provision limiting taxes to public purposes only; this although the prohibitions against donations contained in former Art. 13, Sec. 1, was specifically removed.

4.  Same—Law—Appropriation of Public Money, Limited, to Functioning Governmental Agency for Public Purposes, Interpretation, General Principle Governing

   An appropriation of public money, to be constitutional, must be for some use or object which, directly or indirectly, in some degree or manner will materially aid in proper functioning of some governmental agency, and in so doing, will serve a public purpose; which general principle governs in examining each case in which constitutionality of an appropriation may be challenged as violative of the particular constitutional provision under consideration.

5.  Same—Appropriation as Soldier's Bounty, Compensation—Public Welfare, Promotion of As Essential Public Purpose—Grant, Obligation, Distinguished—Appropriation to Compensate Militiaman's Injury Non-received in Discharge of Duty, Too Remote.

   If the recipient of the bounty and the legislative act, past or prospective, for which bounty is given, is such that granting the bounty, whether as donation or compensation, will necessarily tend to promote public welfare by improving some branch of public service, the appropriation is for a public purpose; but such appropriation is unjustified merely by a feeling of gratitude, or of obligation for an act performed; its design must promote some apparent public purpose, although not necessarily expressed in terms. Held, further, that the possibility that an appropriation to compensate militiaman for

injury received in some manner other than in discharge of his duty as an enlisted man, would tend to encourage enlistments, or promote efficiency of state militia, is too remote.

6. **Same—Mandamus to Effectuate Appropriation for Injury to Militiaman—Injuries "While in Military Service, "Whether for Public Purpose—Demurrer to Alternative Writ, Whether Sustainable.**

Laws 1919, Ch. 39, purporting to appropriate for relief of plaintiff and to compensate him for injuries received "while in the military service of the State of South Dakota," is not an appropriation for a public purpose; since if so considered it would constitute an appropriation for benefit and use of such officer, and would not in effect be merely an appropriation of public moneys to insure against injuries received while in public office; hence an alternative writ of mandamus alleging such legislative recital, fails to show an appropriation for a public purpose, and the writ was properly demurred to.

Original proceeding in mandamus, by G. F. Mackey against Jay Reeves, State Auditor, to compel defendant to issue to plaintiff a warrant, upon State Treasurer, for payment of the sum of $7,000 pursuant to a legislatve act. Demurrer to writ sustained, and writ denied.

*Carl G. Sherwood,* for Plaintiff.

*Chas. E. DeLand,* for Defendant.

*Byron S. Payne,* Attorney General, submitting explanatory and suggestive brief.

(5) To point five of the opinion, Plaintiff cited: Sec. 6942, Rev. Code 1919; State ex rel. Longstaff v. Anderson (S. D.),. 146 N. W. 703; Carter v. Thorson, 5 S. D. 474; Laws 1901, Chap. 176, Const., Art. 11, Sec. 9.

Defendant cited: McCauley v. Brooks, 16 Cal. 11; Renville v. Kingsberg, 166 N. W. 643.

Byron S. Payne, Attorney General, as amicus curiae, cited: Const., Art 11, Sec. 2, and submitted that: Thereunder, if a gift, donation, expenditure or appropriation is for a "public purpose," it is valid, notherwise not; and cited: 1 Cooley Const., Lim. 181-5; Woodall v. Darst, 44 L. R. A. (N. S.) 83.

Re moral obligation sufficient to validate a gift, cited: Bourn v. Hart, 16 L. R. A. 431.

Re the appropriation in question, cited: State ex rel. Morris v. Handlin, 38 S. D. 550; re contractual relation as sustaining

this appropriation, cited: Laws 1901, Chap. 176; re compensation, cited: Const., Art. 12, Sec. 3, last clause; and submitted that: The clause herein involved is valid as an expenditure for a public purpose.

(6)   To point six, Plaintff cited: McCoy v. Handlin (S. D.), 153 N. W. 361; Laws 1919, Chap. 39; Stephenson v. Colgan (Cal.), 14 L. R. A. 459; Cutting v. Taylor, 3 S. D. 11; State ex rel. Morris v. Handlin, 38 S. D. 550; Laws 1903, Chap. 188, Secs. 76, 77, 78; Broadhead v. Milwaukee, 18 Wis. 624; Laws 1915, Chap. 233; Laws 1917, Chap. 163; 12 Corpus Juris, p. 1055, Sec. 698.

Defendant cited: Sec. 2497, Rev. Pol. Code 1903; Laws 1917, Chap. 297; Collins v. State, 3 S. D. 18; Const., Art. 12, Secs. 8, 3; Stanton v. State, 5 S. D. 515; Const., Art. 11, Secs. 2, 9; 1 Cooley Const., Lim. 181-5; Woodall v. Darst, 44 L. R. A. (N. S.) 83; Const., Art. 3, Sec. 23, Subd. 9; Cutting v. Taylor, 3 S. D. 11; Opinions Attorney General, S. D., for 1903-4, re Pensions, State Militia.

SMITH, P. J.   This is an original proceeding by mandamus in the court to compel defendant, Reeves, as state auditor, to issue to plaintiff a warrant upon the state treasurer for payment of the sum of $7,000 pursuant to an act of the Legislature (chapter 39, Laws 1919), which reads as follows:

"Sec. 1.   There is hereby appropriated the sum of seven thousand ($7,000) dollars for the relief of G. E. Mackey, and to compensate him for injuries received while in the militia service of the state of South Dakota.   The auditor shall issue a warrant upon the state treasurer for the above amount to the said G. E. Mackey upon his presenting a voucher therefor and a receipt for said warrant."

Defendant demurs to the writ on the ground that it fails to state facts which entitle plantiff to the relief demanded.   The writ recites the act of the Legislature, the presentation to the auditor of a voucher for the sum named in the act, a receipt for the warrant demanded, and the refusal of the auditor to issue the warrant, on the ground that the act is in contravention of certain provisions of the state Constituton.

Section 1, Art. 13, prior to its amendment in 1918, was as follows:

"Neither the state nor any county, township or municipality shall loan or give its credit or make donations to or in aid of any individual association or corporation except for the necessary support of the poor, nor subscribe to or become the owner of the capital stock of any association or corporation, nor pay or become responsible for the debt or liability of any individual, association or corporation; provided, that the state may assume or pay such debt or liability when incurred in time of war for the defense of the state. * * *"

The section substituted in 1918 reads as follows:

"Sec. 1. For the purpose of developing the resources and improving the economic facilities of South Dakota, the state may engage in works of internal improvement, may own and conduct proper business enterprises, may loan or give its credit to, or in aid of, any assocation, or corporation, and may become the owner of the capital stock of corporations, organized for such purposes. But any such association or corporation shall be subject to regulation and control by the state as may be provided by law. No money of the state shall be appropriated, or indebtedness incurred for any of the purposes of this section, except by the vote of two-thirds of the members of each branch of the Legislature. The state may also assume or pay any debt or liability incurred in time of war for the defense of the state. The state, or any county, or two or more counties jointly, may establish and maintain a system of rural credits and thereby loan money and extend credit to the people of the state upon real estate security in such manner and upon such terms and conditions as may be prescribed by general law."

[1] The statement in chapter 39, recited in the writ, to wit, that the sum claimed by plaintiff was and is "to compensate him for injuries received while in the militia service of the state of South Dakota," must be considered as an allegation of fact which, taken in connection with the allegations that the Legislature has appropriated money for payment of the amount claimed, upon presentation of a voucher therefor, and a receipt for the warrant, to be issued by the treasurer, constitute the

pleading demurred to, and are claimed by plaintiff to be allegations of fact sufficient to entitle him to the relief demanded.

Stated in another form, the allegations of the writ are that plaintiff, while in the militia service of the state of South Dakota, received injuries, and that the Legislature has appropriated the sum of $7,000 for his relief, and to compensate him for such injuries, and that the auditor has refused to issue a warrant for the amount so appropriated, on the grounds: First, that the Legislature is without power to appropriate money for other than a public purpose, and that the appropriation alleged, on the face of the writ, is an appropriation for the benefit of a private person; second, that the act is special legislation violative of the state Constitution.

Section 9 added to article 13, pursuant to chapter 2, Special Session 1916, declares the maintenance of good roads and the supplying of coal to the people of the state from lands belonging to the state to be works of necessity and importance in which the state may engage. The amended section 1 of article 13 was adopted pursuant to chapter 163, Laws of 1917. At the 1918 Special Session other amendments to article 13 of the Constitution were proposed by the Legislature and adopted by the people in connection with section 1, supra. Sections 10 and 11 declared the manufacture and distribution and sale of cement and cement products to be works of necessity and importance in which the state may engage. Sections 12 and 13 declared the manufacture, distribution and sale of electric current for heating, lighting and other purposes to be works of public necessity and importance in which the state may engage. Sections 14 and 15 declared the mining, distribution and sale of coal to be works of public necessity and importance in which the state may engage, and section 16 declared that the state may engage in works of internal improvement, any provision in the Constitution, or limition in section 2 of article 13, to the contrary notwithstanding. Each of these amendments authorizes the Legislature to enact laws under which the state may engage in the enterprise named by a two-thirds vote of the members elected to each branch of the Legislature, and places certain conditions and limitations upon the indebtedness to be incurred.

[2]  Each of the enterprises named is specifically declared to be of a public character and a public necessity.  Pursuant to chapter 168, Laws 1917, art. 29 was added to the Constitution which provided for state operation of elevators, warehouses, flouring mills, and packing houses.  Prior to the adoption of these amendments, such industries were deemed private enterprises, and under the terms of the original section 1 of article 13 the state was prohibited from engaging therein or lending its credit or making donations in aid thereof, and was also prohibited from engaging in works of internal improvement, even though such works might be of public character.  Section 1, as amended, authorizes the state to engage in works of internal improvement, and provides that the state may own and conduct proper business enterprises, and may loan and give its credit to or in aid of any association or corporation, and may become the owner of the capital stock of corporations, organized for the purpose of developing the resources and improving the economic facilities of the state.  The nature and character of the enterprises in which the state may engage, as defined in this section, under well-settled rules of construction, are limitations upon legislative powers which need not be considered at this time; nor is it necessary to consider the effect of the legislative declaration that certain enterprises are for the purpose of developing the resources and improving the economic facilities of the state.

[3]  These amendments evidence a fundamental change in the policy of the government, primarily designed to effect an early development of the resources and economic facilities of the state.  But they do not evidence an intent to abrogate or modify article 11, §2, of the Constitution, which declares that:  "Taxes * * * shall be levied and collected for public purposes only."  This provision clearly inhibits the collection, and necessarily the expenditure, of public moneys for private benefit as distinguished from public purposes.

In State ex rel. Morris v. Handlin, 38 S. D. 550, 162 N. W. 379, it was held that an appropriation of public moneys to be paid to members of the militia regiment known as the Fourth South Dakota Infantry, for the "purpose of encouraging military

training, the payment for services of the members of said regiment for federal services upon the Mexican border, and for continued service in the National Guard Reserve of the United States," was an appropriation "for a public purpose advantageous to the welfare of the state, * * * and not in conflict with any of the provisions of our state Constitution." .    .    .    ..

The distinction between the appropriation and expenditure of public funds for a public purpose and the appropriation and expenditure of public funds for a private purpose for the benefit of a private person is clearly contemplated and maintain throughout all the various amendments to the Constitution above referred to, and it seems perfectly clear that nothing contained in article 13, as amended, was intended to repeal or modify the declaration in section 2, art. 11, that "taxes * * * shall be levied and collected for public purposes only," even though the prohibition against donations contained in former article 13, § 1, was not specifically renewed.

[4, 5] An appropriation of public money to be constitutional must be for some use or object which, directly or indirectly, in some degree or manner will materially aid in the proper functioning of some governmental agency, and in so doing will serve a public purpose. Manifestly each case in which the constitutionality of an appropriation may be challenged as in violation of the particular provision of the Constitution under consideration must be examined in the light of this general principle. We said of the appropriation in the Morris Case:

"It * *. * was not made as a gift, nor from motives of charity, * * * but it was made on the ground of and because it was beneficial to the people of this state for purposes of protection to the public."

We also pointed out that decisions based on the same principle had sustained appropriations for services of fire companies, also bounties for soldiers or their families, as inducements to encourage enlistments and also as inducements to faithful service after enlistment. If the recipient of the bounty, and the act past or prospective, for which the bounty is given, are such that the granting of the bounty—whether it be considered a donation or compensation—will necessarily tend to promote the public

welfare by improving some branch of the public service, the appropriation is for a public purpose. Such an appropriation, however, cannot be justified merely by a feeling of gratitude, or a feeling of obligation for an act performed. It must rest upon a design to promote some public purpose which is apparent, even though not necessarily expressed by the terms of the act itself. The possibility that an appropriation for compensation of a militiaman for injuries received in some manner other than in the discharge of his duty as an enlisted man would tend to encourage enlistments, or aid in the efficiency of the organized milita of the state, is too remote to be considered.

[6] We are of the view that the allegations of the writ admitted by the demurrer confine the inquiry at this time to the single question whether, on its face, chapter 39, Laws of 1919, purports to be an appropriation for a public purpose. The act itself pleaded as a part of the writ recites that the appropriation is to "compensate plaintiff for injuries received while in the militia service of the state of South Dakota."

Suppose the Legislature had passed an act providing that every public officer of the state should receive a specified amount to compensate him for injuries received while holdng public office. Is it not clear that an appropriation pursuant to such an enactment would amount to an appropriation of public funds to a use other than public purposes, because, in its very nature, it would constitution an appropriation for the benefit and use of such officer, and would in effect be merely an appropriation of public moneys to insure against injuries received while in public office? It is difficult to see what distinction could be drawn between such an enactment and the one before us, which appropriates public moneys to compensate plaintiff for injuries received while in the militia service of the state. Had the writ recited that the appropriation was to compensate plaintiff for injuries while in the discharge of his duties as a member of the state militia, the question presented would be more complicated and of much greater difficulty.

We are constrained to hold that upon its face the writ fails to show an appropriation for a public purpose, and that the demurrer to the writ should be sustained. It will be so ordered.